## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Kevin J. O'Dowd, being duly sworn, depose and state as follows:

### Affiant Background and Purpose of Application

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) for location and other historical information, including the contents of communications, pertaining to the subscribers or customers associated with the following cellular telephone numbers:

   a. 347-846-3949,
   b. 347-849-6796,
   c. 240-971-8870,
   d. 347-430-1429,
   e. 929-471-7658,
   f. 347-912-8624,
   g. 929-622-9167, and
   h. 347-849-9631

(collectively, the "Target Phone Numbers"). The service provider for all the Target Phone Numbers is T-Mobile US, Inc. ("T-Mobile"), a wireless provider whose custodian of records is located at 4 Sylvan Way in Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. The information and records to be seized are described herein and in Attachment B.

2. This application is in relation to a suspected criminal conspiracy in which Irineo Perez-Guzman, Jehuva Saavedra-Espinoza, Marco Saavedra-Espinosa, and others yet to be fully identified violated 8 U.S.C. § 1324 by conspiring to knowingly bring aliens to the United States at a place other than a designated port of entry and to transport those aliens in furtherance of their illegal entry while knowing or recklessly disregarding the fact that they were aliens who had illegally entered the United States. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§

1

2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3.  I am a Border Patrol Agent (BPA) of the United States Border Patrol (USBP), a component of Customs and Border Protection (CBP) within the Department of Homeland Security (DHS). I have been so employed since July 17, 2006. I am currently assigned to the Richford, Vermont station as a Border Patrol Agent (Intelligence) (BPA-I). I have been assigned to the Richford Station as a BPA-I for approximately 2 years. I was previously assigned to the Sierra Blanca, Texas Border Patrol Station as a BPA for approximately 6 years and to the Special Operations Group Headquarters in El Paso, Texas as a Border Patrol Search Trauma and Rescue Operator for approximately 8 years.

4.  In my experience investigating many alien smuggling cases, electronic devices were commonly used to facilitate the smuggling event by arranging the coordination of transportation and by guiding both the aliens and the smugglers via global positioning system applications and verbal and/or non-verbal communications relayed over Wi-Fi and/or a telecommunications network.

5.  Based on my training and experience, I am aware that individuals working together to commit crimes often use their cellular phones to contact one another, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently necessary in the Richford Station Area of Responsibility (AOR); given the remote and rural nature of the AOR, arranging meetings at precise times and navigating to locations unlikely to appear on printed maps often requires the use of cellular devices. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

6. The information contained within this affidavit is based upon my training and experience, upon my own investigative efforts, and upon investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. It is meant to set forth probable cause to believe that the violations occurred, and it does not include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant as direct quotations or complete descriptions.

## Probable Cause

Events on July 18 and 19, 2022

7. On July 18, 2022, at approximately 7:55 p.m., Border Patrol Agents at the Richford, Vermont Border Patrol Station were notified by Swanton Sector Communications ("Dispatch") that a person walking northbound was captured in an image taken by a remotely operated camera placed in a wooded area near the international border between Canada and the United States in the Richford AOR. The camera is activated by motion within its field of view; it automatically records images when motion is detected and transmits them to USBP computer systems where they can be viewed by USBP personnel. USBP agents place cameras such as this one in areas known to have been used by smugglers or undocumented aliens attempting to cross the border without inspection by immigration officers. This particular camera was located along Berry Road approximately 0.3 miles south of the United States – Canada international border, in a sparsely populated rural area west of Richford, Vermont. Agents had recently detected evidence of illegal cross-border activity at this location, and they were on alert for further illicit activity.

3

8. I and other agents of the Richford Border Patrol Station know from our experience with previous smuggling events in the Richford AOR that foot guides employed by alien smuggling organizations (ASOs) will often surreptitiously walk into Canada between ports of entry when they are preparing to smuggle a group of aliens into the United States. These foot guides are known to then meet with the aliens in Canada and lead them back into the United States, typically near the location where the foot guide entered Canada. Richford Station agents were therefore monitoring the area of the northbound crossing for a follow-on southbound alien smuggling event.

9. On July 19, 2022, at approximately 7:35 p.m., Richford Station agents were notified by Dispatch that a camera located directly adjacent to the United States – Canada international border approximately 0.5 miles northwest of the previous camera activation had detected a group of five or more subjects entering the United States from Canada. Agents responded to the location of this camera and began searching for the suspected illegal aliens.

10. At approximately 8:40 p.m. on July 19, 2022, BPA Chris Cairns encountered several subjects in woods approximately 20 yards north of Berry Road and 0.3 miles south of the United States – Canada international border. The subjects began to run away as BPA Cairns approached, and BPA Cairns identified himself as a U.S. Border Patrol agent in the Spanish language and ordered the subjects to stop. BPA Cairns apprehended two of the subjects, and three subjects fled to Berry Road where BPA Jeff Vining was positioned to assist BPA Cairns. BPA Vining successfully apprehended these three subjects as they emerged on Berry Road.

11. Agents questioned the five subjects as to their citizenship, and all subjects readily stated that they were citizens of Mexico. None of the subjects were able to produce valid immigration documents that would allow them to be legally present in the United States. All

4

subjects were then placed under arrest and transported to the Richford Border Patrol Station for further investigation and immigration removal proceedings.

12. After arriving at the Richford Border Patrol Station, agents reviewed images captured by the remote camera north of Berry Road, and they discovered there was one additional subject seen in images that had not been apprehended. BPA Vining and Supervisory BPA Aaron Porter returned to Berry Road to search for the remaining subject, and they soon encountered a sixth subject concealed in the brush in the same area.

13. At 9:49 p.m. a camera positioned on Berry Road captured an image of a vehicle bearing New York license plate JKE6902. Given the time and location of the vehicle, agents suspected it was likely the intended pick-up vehicle for the six individuals detained by agents that evening. BPA-I Bradley Audette queried the license plate in computer systems at the New York State Intelligence Center and learned it was registered to PV Holdings, which I know to be a rental car company. BPA-I Audette contacted PV Holdings to inquire who was renting the vehicle at the time it was present on Berry Road, and a PV Holdings employee informed him it had been rented by Yefriner Caceres. Agents did not locate the vehicle that evening.

14. At the Richford Border Patrol Station, the detained subjects produced Mexican identification documents that identified them as:

- Irineo Perez-Guzman,
- Raquel Castellanos-Cruz,
- Maria Del Rosario Contreras-Alvarado,
- Jesus David Lara-Ortiz,
- Rigoberto Martinez-Morales, and
- Ricardo Ismael Vizcarra-Lozano.

5

15. Agents noted that Perez-Guzman bore a strong resemblance to the suspected foot guide seen in images walking northbound towards Canada on July 18, 2022. The subject seen in those images was of a similar build to Perez-Guzman, with a similar hairstyle, and was carrying a small satchel similar to the one carried by Perez-Guzman at the time of his apprehension.

16. At approximately 11:46 p.m. on July 19, 2022, I advised Perez-Guzman of his rights using CBP Form I-214, as witnessed by BPA Vining and captured on an audio recording. Perez-Guzman signed Form I-214 to acknowledge his understanding his rights and to indicate that he was willing to waive those rights and answer questions without a lawyer present. I then interviewed Perez-Guzman regarding his immigration status and his involvement in the events that took place near Berry Road on July 18 and July 19, 2022. During this interview, Perez-Guzman made the following statements, reported here in sum and substance:

    a. Perez-Guzman claimed he had hitchhiked from New York to northern Vermont for the purpose of visiting Canada.

    b. Perez-Guzman stated he had walked north into Canada through the woods on or about July 18, 2022. Perez-Guzman stated he entered Canada with the intention of touring the country for a few weeks to see if he might want to move there because he is having problems in New York.

    c. Perez-Guzman became lost after entering Canada, and he had been wandering in the woods since becoming lost. He stated he never reached his intended destination or arrived at any roads in Canada. He claimed to have randomly encountered the other aliens apprehended during the evening of July 19, 2022, and he decided to join them as they walked into the United States.

    d. Perez claimed to not know any of the people with whom he reentered the

United States and that he had no prior contact with them before encountering them in the woods.

17. During this interview, I showed Perez-Guzman a Motorola smartphone and a Samsung S8 smartphone found in his possession at the time of his apprehension, and Perez-Guzman affirmed his ownership of them. I asked Perez-Guzman for consent to search the contents of these two phones to ensure they contained no evidence of smuggling activity or other crimes. Perez-Guzman verbally consented to the search and signed a USBP "Consent to Search" form to document his consent before providing me with the passcodes for both devices. In my initial review of the devices, I verified that phone numbers assigned to those devices are 347-846-3949 and 347-849-6796—two of the Target Phone Numbers in this warrant application. From an internet search and personal experience, I know the 347-area code to be associated with multiple boroughs of New York City.

18. I reviewed messages, call logs, and multimedia content contained in the devices, and I found evidence that Perez-Guzman had been present in Vermont near the United States – Canada border on other occasions in recent weeks. I found further evidence that Perez-Guzman had recently visited urban areas of Canada prior to the events of July 18 and 19, despite the absence of any border crossings recorded in DHS systems. I also found communications that, based on my experience investigating prior alien smuggling events in the Richford AOR, are consistent with an alien smuggler coordinating movement of aliens and/or contraband across the United States – Canada border. For example, I reviewed communications that: exchanged GPS map markers between subjects while they are in wooded areas near the border; relayed information to other devices alerting them about vehicles passing by their locations; shared travel routes to or through border areas; designated specific times and locations for people to meet in

rural areas near the border; and shared records of wire transfer payments in excess of $1,000. Many of these communications took place between Perez-Guzman and a contact saved in his phone as "Chrlaly" with phone number 929-622-9167 (another of the Target Phone Numbers). I know from an internet search and personal experience that area code 929 is associated with boroughs of New York, New York.

19. Following those discoveries, I expressed doubt to Perez-Guzman about his description of the events, and I asked if he had in fact entered Canada with the intention to meet the other aliens and act as their guide into the United States. Perez-Guzman denied that proposition, and he indicated he wanted to consult with a lawyer. I then ceased further questioning of Perez-Guzman. Perez-Guzman's phones were seized as evidence for investigation of Perez-Guzman's illegal reentry into the United States and his involvement in suspected alien-smuggling activities.

20. As a result of the events on July 18 and 19, 2022, Irineo Perez-Guzman was arrested and charged by criminal complaint with a violation of 8 U.S.C. § 1326(a) for knowingly entering the United States after having been previously excluded, deported, or removed and without having received the express permission of the appropriate federal official to apply for reentry. He was subsequently indicted for that crime on July 28, 2022, under District of Vermont case number 5:22-cr-80, and the case remains pending at this time. For the reasons described in this affidavit, however, I submit there is probable cause to believe that Perez-Guzman was also violating 8 U.S.C. § 1324 on that and other occasions.

Events on July 27 and 28, 2022

21. On July 27, 2022, at approximately 10:15 p.m., BPA Jeff Vining was patrolling an area of the Richford Station AOR along the international border with Canada. He observed a dark-colored SUV with a Virginia license plate (UCV-5417) traveling north on Pinnacle Road about one mile south of the Pinnacle Port of Entry (POE). Based on the remote, rural location, it is unusual for out-of-state vehicles to be driving in the area at that time of night. BPA Vining requested a check of the vehicle's registration through Dispatch. Moments later, Dispatch advised that the vehicle was registered to Avis Rental Cars.

22. While requesting checks, BPA Vining could see what appeared to be an active GPS navigation device attached to the front windshield of the vehicle. BPA Vining and I are aware, based on our training and experience, that individuals smuggling humans or drugs across the international border frequently use rental cars and GPS navigation to facilitate the illegal entry and subsequent transportation of aliens or contraband. The use of a rental car may help shield the driver from identification or from the potential forfeiture of his or her personal vehicle. The use of GPS navigation is often necessary, particularly in the Richford AOR, given the drivers' unfamiliarity with the rural and poorly marked roads that do not appear on many maps.

23. While following from a distance, BPA Vining observed the vehicle turn off Pinnacle Road and onto Berry Road. BPA Vining observed the vehicle briefly stop adjacent to the same wooded area where Perez-Guzman was apprehended on July 19, 2022, after which it continued traveling west.

24. BPA Vining continued following the SUV west on Berry Road after it had stopped, and it turned south on Lost Nation Road. He noticed the vehicle was traveling at a higher rate of speed than it previously had been on Pinnacle Road and Berry Road. BPA Vining notified other

Border Patrol Agents in the area of his observations and location and requested their assistance. He then initiated a vehicle stop at the intersection of North Branch and Marvin Road.

25. BPA Vining approached the vehicle and introduced himself to the driver as a United States Border Patrol Agent. The vehicle was occupied by the driver and two individuals in the rear seat. BPA Vining questioned the driver, who was identified as Marco Saavedra-Espinosa in part by his Maryland driver's license, and he claimed to be a Lawfully Admitted Permanent Resident (LAPR) of the United States but stated he did not have his LAPR Card with him. Saavedra-Espinosa stated he was in the area to pick up his friends while pointing to the rear seat. When asked, however, Saavedra-Espinosa could not provide their names.

26. BPA Vining then conducted an immigration inspection of the rear-seat occupants. Both subjects readily admitted to being in the United States illegally and to not having any documentation or legal status allowing them to remain in the country. BPA Vining noticed that both subjects had muddy clothing and shoes and that their pants were damp below their knees. In our experience, those are common observations when encountering subjects who have crossed the international border and approached a road on foot through remote wooded areas, across streams, and through damp farm fields. BPA Vining identified the passengers as Jose A. Perez-Benavides and Leonardo Navarrete-Huerte. Both claimed to be citizens of Mexico.

27. Saavedra-Espinosa, Perez-Benavides, and Navarrete-Huerte were arrested and transported to the Richford Border Patrol Station for processing and further investigation. After securing the individuals at the station, border patrol agents returned to the pickup location on Berry Road and pretended to be a load-up vehicle by driving slowly and honking the horn to signal any additional subjects hiding in the wooded area. A few moments later, two male subjects exited the woods and began approaching an agent's vehicle. Once the subjects were

close enough to the vehicle to identify it as a marked Border Patrol vehicle (through the glare of the headlights), both subjects quickly ran back into the woods. Agents pursued the subjects through the woods, but they were unable to make contact before they returned to Canada. Agents then notified the Royal Canadian Mounted Police (RCMP) of the situation.

28. Agents searched the SUV and located a notebook with a hand-drawn map that included a circle on Berry Road and a route to Interstate 91 via back roads. They also located a temporary license belonging to Irineo Perez-Guzman (the individual involved in a previous alien smuggling event on July 18-19, 2022). They also located a copy of a rental contract for the vehicle under the name "Jehuva Saavedraespinoza" originating in New York, New York, originally for the period of July 25-26, 2022. They also located gas-station receipts from Colchester, Vermont for fuel purchases occurring around 9:00 pm on July 26 and around 5:00 pm on July 27, 2022.

29. Agents interviewed Perez-Benavides and Navarrete-Huerte separately. Both indicated they had paid $2000 via bank transfer to the smuggler with whom they had made arrangements to illegally enter the United States; each anticipated paying additional money to the smugglers when they arrived in New York. They each gave consent for agents to search their phones, and both Perez-Benavides and Navarrete-Huerte had phone number 929-471-7658 (one of the Target Phone Numbers) saved in their phones, the user of which they identified as a facilitator of their smuggling event. This number was saved under the name "Charly Charly" in one phone, and it was saved as "Gabriel Quintero" in the other. Perez-Benavides and Navarrete-Huerta had been navigating to the pickup location using GPS information sent to them from a Montreal-based phone number.

30. As a result of the events on July 27 and 28, 2022, Saavedra-Espinosa was arrested

11

and charged by criminal complaint with a violation of 8 U.S.C. § 1324(a)(1)(A)(ii) for transporting and attempting to transport aliens in furtherance of their illegal entry into the United States. He was subsequently indicted for that crime on August 11, 2022, under District of Vermont case number 2:22-cr-89, and the case remains pending at this time.

31. A blue OnePlus cellular phone was seized from Saavedra-Espinosa's vehicle at the time of his arrest. On August 2, 2022, I applied for an obtained a search warrant for Saavedra-Espinosa's phone. While examining the device pursuant to the warrant, I noticed messages from T-Mobile confirming the phone has been operating on the T-Mobile network since February 19, 2020, and the device's assigned phone number was 240-971-8870 (one of the Target Phone Numbers).

Subsequent Interview of Saavedra-Espinosa

32. On August 31, 2022, Saavedra-Espinosa participated in a proffer interview with federal agents, an attorney for the United States, and his appointed counsel to share information regarding his involvement with and knowledge of an alien smuggling organization. I participated in the interview, which was conducted with the assistance of a Spanish-language interpreter. I brought Saavedra-Espinosa's OnePlus smartphone to the proffer, and he agreed to answer questions regarding communications with suspected alien smugglers that had been located on the device.

33. Saavedra-Espinosa identified the following people as participants in the alien smuggling organization, and he showed me phone numbers used by those subjects on his phone.

    a. Marco Saavedra-Espinosa identified Perez-Guzman as his brother-in-law (the husband of Saavedra-Espinosa's sister, Jehuva Saavedra-Espinoza). Saavedra-Espinosa

stated that, based upon conversations with his sister, he believed Perez-Guzman had been involved in 3 or 4 alien-smuggling events in Vermont. Saavedra-Espinosa stated he agreed to participate in the smuggling event of July 27, 2022, as a favor for Perez-Guzman to settle an outstanding debt he owed to Perez-Guzman. Saavedra-Espinosa identified phone numbers 347-846-3949 and 347-849-6796 as phone numbers used by Perez-Guzman (two of the Target Phone Numbers), and I observed those numbers in Saavedra-Espinosa's phone.

  b. Marco Saavedra-Espinosa identified Jehuva Saavedra-Espinoza as his sister and the wife of Perez-Guzman. Saavedra-Espinosa stated Jehuva Saavedra-Espinoza participated in the smuggling event on July 27, 2022, by traveling to Canada and transporting the aliens to the border area prior to their entry into the United States. He identified phone number 347-430-1429 (one of the Target Phone Numbers in this warrant application) as a phone number used by Jehuva Saavedra-Espinoza during coordination of that smuggling event. I observed that number in Saavedra-Espinosa's phone exchanging communications that supported his description of her involvement.

  c. Saavedra-Espinosa indicated that a person known to him only as "Charly" was the organizer of the smuggling event on July 27, 2022, and that "Charly" was an associate of Perez-Guzman involved in previous smuggling events. Saavedra-Espinosa showed me communications with "Charly" in his phone, where "Charly" was providing instructions on where and when to pick up the aliens on Berry Road the evening of July 27, 2022. Saavedra-Espinosa stated he was to transport the aliens to New York, where "Charly" would meet him and pick up the aliens. Saavedra-Espinosa identified phone numbers 347-912-8624 and 929-471-7658 (two of the Target Phone Numbers in this

13

warrant application) as phone numbers used by "Charly," and I observed those numbers in Saavedra-Espinosa's phone during my review. I also note that both Perez-Benavides and Navarrete-Huerte—aliens involved in the July 18, 2022, smuggling event—each had phone number 929-471-7658 saved in their phones.

    d. Saavedra-Espinosa discussed a person known to him only as "Carin" as being another accomplice of Perez-Guzman in previous alien-smuggling events. I observed phone number 347-849-9631 in Saavedra-Espinosa's phone during my review as the phone number saved under the contact "Carin." Based on a subpoena return from T-Mobile, I believe "Carin" may be Karin Millan, who was listed as the account holder for that phone number, which is one of the Target Phone Numbers.

Further Investigation

34. Pursuant to his consent, I examined the Motorola smartphone and the Samsung smartphone seized from Irineo Perez-Guzman for evidence of additional alien smuggling events carried out by the subjects of this investigation. I found a text message conversation that took place in Whatsapp on or around November 7-9, 2021, between the Motorola smartphone and 929-622-9167, one of the Target Phone Numbers believed to be used by "Charly." The exchange was in Spanish, which I have learned to speak and read throughout my years of service with the Border Patrol.

    a. A message was sent from Perez-Guzman's device which I translate as "I am the wife just to advise you that he is in the hospital they stabbed him last night". I believe, from the content of the message that Jehuva Saavedra-Espinoza was using Perez-Guzman's device at that time.

14

  b. Perez-Guzman's device later sent a message which I translate as "Did you already communicate with carin", which I believe refers to Karin Millan as described above. "Charly" responded in the affirmative and later sent a message I translate as "I advise you at 8:30 they pick up the food or perhaps earlier". I believe that "food" refers to aliens being smuggled across the border because Marco Saavedra-Espinosa stated, during his proffer interview, that "Charly" often uses the word "food" in that manner as code in communications.

  c. In the remainder of the conversation "Charly" and the user of Perez-Guzman's device—believed to be Jehuva Saavedra-Espinoza—appear to coordinate transport of smuggled aliens to an address in Flushing, New York. On the morning of November 9, 2021, "Charly" sent a message I translate as "Ok carin already arrived". I believe the exchange likely showed that Karin Millan was transporting aliens in a smuggling event arranged by "Charly," whose identity is not yet known.

  35. I found several similar conversations between Perez-Guzman's device and "Charly" in which they coordinate pick-up and drop-off times, share GPS pins in areas near the international border, exchange photos of vehicles to be used during suspected smuggling events, and discuss collection of payments. "Carin" is often mentioned in those conversations. Subpoena returns from T-Mobile also showed frequent contact from November 2021 to August 2022 amongst Target Phone Numbers believed to be used by Irineo Perez-Guzman, Jehuva Saavedra-Espinoza, Karin Millan, and "Charly".

  36. Each of the Target Phone Numbers was searched in the Hawk Analytics phone lookup tool, and the databases showed each number had been operating on cellular networks belonging to T-Mobile. Subpoenas were then served on T-Mobile to obtain subscriber

15

information and call detail records for the Target Phone Numbers on September 1, 2022. Information provided by T-Mobile confirmed that the Target Phone Numbers for which subpoenas were sent were each operating on the T-Mobile network during dates relevant to this investigation.

37. I reviewed call detail records for the 347-849-9631 number belonging to Karin Millan. On July 18, 2022—the day Perez-Guzman walked into Canada from Berry Road—the phone had several contacts with phone number 646-372-9845. There were additional contacts between those numbers on other dates, including multiple contacts between August 28 and August 31, 2022. I queried the 646-372-9845 number in DHS computer systems, and I found it was listed as a contact number provided by Yefriner Caceres for an international flight from Boston, Massachusetts to Toronto, Canada on August 29, 2022. DHS records show Caceres returned to Newark, New Jersey on August 31, 2022. Caceres's short trip to Canada and communications with Millan are consistent with Caceres participating in a smuggling event around August 30, 2022. As noted above in paragraph 13, a vehicle rented by Yefriner Caceres was observed in the area where Perez-Guzman was arrested at a time that would have been consistent with an anticipated pickup for him and the aliens with whom he was located on July 19, 2022.

**Information Regarding Cellular Service Providers**

38. Based on my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."

Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data. Based on my training and experience, I know that T-Mobile will have collected cell-site data about the Target Phone Numbers because it is the Service Provider for those numbers.

39. Based on my training and experience, I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## Conclusion and Request

40. Based on the foregoing, I submit there is probable cause to believe that between on or about July 18, 2022 and July 27, 2022, and other dates, Irineo Perez-Guzman, Jehuva Saavedra-Espinoza, Marco Saavedra-Espinosa, "Charly," and others conspired to bring aliens to the United States at a place other than a designated port of entry and transport those aliens in furtherance of their illegal entry while knowing or recklessly disregarding the fact that they were aliens who had illegally entered the United States, in violation of 8 U.S.C. § 1324. I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c)(1)(A), to obtain information from T-Mobile regarding the Target Phone Numbers, specifically directing T-

Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

41. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

42. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 13 day of September 2022.

_____
Kevin J. O'Dowd, Border Patrol Agent (Intel)
U.S. Border Patrol, Department of Homeland Security

Subscribed and sworn to before me on September 13th, 2022

_____
Hon. Kevin J. Doyle, Magistrate Judge
United States District Court
District of Vermont